Baitzíojí, J.,
delivered the following dissenting opinion:
This case depends upon the effect to be given to a discharge by the Judge of the County Court to an Administrator, under the 5th section of the act “ in addition to an act concerning wills, &c., approved 15 Feb., 1834,” by which it is provided, “ that it shall be competent for an Executor or Administrator to receive a discharge upon application to the Judge of the County Court, provided six months’ notice of the application be given, &c. and provided, also, that it shall also appear that the said applicant has faithfully and honestly discharged the trust and confidence reposed in him, and the discharge so obtained shall be taken to operate as á release from the duties of Administrator, &c.; and shal 1 furthermore operate as a bar to any suit against the person so having acted as Executor or Administrator, unless the same be commenced within five years from the date of said discharge; saving to all persons infants, non compos, &c., who may have an interest’in said estate, two years from the time of the removal of any disabilities herein enumerated.” Duval, 188, sec. 5.
The majority of the Court in the opinion delivered, affirm the doctrine that a' discharge obtained under this act is a bar, and although in the case under consideration it was obtained on (the very day the suit of plaintiff was instituted, yet they hold a plea setting up the discharge to be conclusive and fatal to it. I cannot concur in this judgment of the Court, nor in the reasoning contained in the opinion delivered; and conceiving that important principles are involved far beyond the mere amount in controversy, have felt it a duty to record the grounds of my dissent.
The Statute under discussion, has been a subject of anxioqs *341 study and reflection with me, especially since reading the opinion of the Court, and yet I cannot agree with the meaning given to its terms. It is perhaps my misfortune not to perceive room for construction. I find neither ambiguity nor obscurity in any part of the act. The terms are of common use, and as well understood as any in the Ian-guage ; nor do I discover from the opinion delivered, either word or sentence which is asserted to be susceptible of a diversity of meaning. If this be the case, construction is inadmissible interpretation which seeks to attain the meaning of the words, and thereby find out the design of the Legislature, is the true and only guide. Lieber, in Ms work on Hermeneutics, takes the distinction between the two terms not sufficiently regarded in the law-books, “ construction differing from interpretation seeks to discover a design beyond that expressed by the Legislature,” and is obviously a most delicate and oftentimes a dangerous task. To declare that the Legislature meant differently to what they have expressed, and"either more or less than they have expressed by the language used, would seem to be the making, not the exposition of. a law, a repeal of the old, and enactment and substitution of a new law, — this, most clearly, is legislation, and not the exercise of judicial power. Is it not better and safer, by far more wise and accordant with our institutions, based as they are upon a system of laws, for the Courts to decline the exercise of power so questionable, and say at once the law is too ambiguous or obscure to be enforced 1 The English Courts of the present day are taking the right course and placing their decisions, in cases of construction, on grounds of the clearest propriety and most indisputable truth. “ When the legislature has used words of definite and plain import, it would be-very dangerous to put upon them á construction which would amount to holding that the legislature did not mean what it had expressed. The fittest course in all cases where the intention of the legislature is brought into question, is to adhere to the words of the statute, construing them according to'their nature and import. The most enlightened and experienced Judges have some times lamented the too frequent departure from the plain and obvious meaning of the words of the law by which a case is governed; and themselves hold it the much safer course to adhere to the words of the statute construed in their ordinary import, than to enter into any inquiry as to the supposed intentions of the parties who framed the act.” Dwarris on Stat. 703. 6 B. & C. 712. 10 ditto. 527.
*342 “ The Judges are not to presume the intentions of the Legislature, but to collect them from the words of the law, and they have nothing to do with the policy of the law.” Dwarris, 703.
“ Recently, all the Judges, and particularly the late and present Lord Chief Justice, have manifested the strongest inclination to adhere more closely in the construction of Statutes to the words of the Act of Parliament. I have often lamented, says Lord Tenterden, that in so many instances the Courts have departed from the plain and literal construction of the Statutes relative to the settlement of the poor. Where the authorities are silent, I shall hold myself forced to construe these Acts of Parliament according to the plain and popular meaning of the words.” 2 B. & A., 522. Dwarris.
In another case, the same distinguished Judge says, “ the words may probably go beyond the intention; but if they do, it rests with the Legislature to malee an alteration, the duty of the Court is only to give effect to the provision.” “ It is safer,” said Mr. Jus. Ashurst, “ to adopt what the Legislature has actually said, than to suppose what they meant to say.” Dwarris, 707 — 8. 1 T. R., 52.
If these Courts, in the fullness of a career distinguished by singular wisdom, ability and virtue, gaining each day upon the confidence and affections of their people, have thus so clearly and evidently disavowed this doctrine in its past extent, may it not well become a Court just entering upon its weighty and responsible duties to pause before they affirm doctrines thus condemned as improper, and which may certainly be questionable in reason and good sense ?
If resort is to be had to construction, however, let us examine the rules appealed to by the majority of the Court. The first is, that “ a Statute is to be so construed that no clause, sentence or word, shall be superfluous, void or insignificant.” This rule supports the views we entertain; for, according to our conception, the decision of the Court can only be sustained by the disregard of all the words after, “ Executors or Administrators,” and by treating the words, “ unless the same be commenced within five years from the date of said discharge,” and also the saving of infants, &c., as wholly “ superfluous, void and insignificant.” These words stricken out, the decision of the Court is well supported.
The second rule relied upon, is that “ the intention of the makers is to govern, although such construction may seem to be contrary to *343 the letter of the Statute.” Dwarris, who has written most extensively on this subject, and whose work is quoted with approbation in the English arid American Courts, says of this rule, “ it appears that the letter of a Statute may be enlarged or restrained by an equitable construction, and there are also certain cases which are of necessity by construction excepted out of Statutes. Such are cases out of the meaning of the law, and therefore held not to be within its operation, though included in the terms of it. It is principally in reference to such cases that it is said a remedial Statute shall be expounded contrary to the words — contrary to the text, &c.; in all its shapes a questionable doctrine, in its stricter sense quite inconsistent with the sounder principles of judicial interpretation, and requiring, it is apprehended, to be greatly modified before it can be at dll admitted as a rule of construction.” Dwarris, 725.
He continues, “ the determination of the Judges in Edrick’s case, is very deserving of attention. And the Judges said they ought not to make any construction against the express letter of the Statute, for nothing can so express the meaning of the makers of the Act as their own direct words — ‘ index animi sermo” Dwarris on Stat.,'725.
All Acts are to be taken by reasonable construction, and in doubt, ihl cases Judges may enlarge or restrain the construction of Acts of Parliament, according to the sense of the law-makers.” “ Beneficial Statutes have always been taken and expounded by equity ultra the strict letter, but riot, it is well and wisely said,’ contra the letter.”— Dwarris, 726.. But admitting the rule to its fullest extent, where is its application to the case under consideration ?
Still a third rule is referred to, “ that the old law, the mischief and the remedy, are to be considered, and we are to give such construction to the ne,w law as will suppress the mischief of the old and advance the remedy under the new one.”
It is first important to ascertain with accuracy and correctness the state of the old law; and here, we apprehend, the Court is in error in supposing that a discharge of the Executor by the Court of Probate was not allowed previously to this Statute. In the earliest period of legal proceedings, we find it thus described : “ The effect which arises of a just and true account is this — the Executor having well and faithfully performed his office, and made his account accordingly, ought to be acquitted and discharged from further molestation and suits, *344 as one that has fully administered and finished his office; neither is he to be called by the ordinary to any further account.” Swinburne on Wills, 379.
And “thus the ordinary, finding the account to be true and perfect, may pronounce for the validity thereof, and so acquit the Executor so far forth as appertaineth to the Ecclesiastical Court. But this is perpetually to be observed, that the creditors to whom the 'testator did owe any thing, and the legatees, and all others having interest, are to be cited to be present at the making of the said account, otherwise the account made in their absence, (and they never called), is not prejudicial to them.” Swinburne, p. 379. And this has been the law of Florida, -also; for, at the earliest period of the Territorial Government, the common and statute laws of England of a general and not of a local nature, down to the 4th of July 1776, were declared to be of force. The law prevailing in the Ecclesiastical Courts on'the subject of Wills, Executors and Administrators, was by various English Statutes, and by recognition in the English Courts, part of the law of England, and consequently thus embraced by our statute. Preface to Swinburne on Wills. Duval, 357. Whilst the Executor was thus discharged by the court of ordinary, he was yet liable in the. common law courts and in the courts of chancery; in the former to shew that he had fully administered at the suit of a creditor, and in the latter his account was allowed to be falsified at the instance of any party interested by shewing error, mistake, &c. 2 Williams on Exors., 1213, 1239—40. 1 Story’s Equity, 509, 512. The reason for deviation in these cases from the rule as to the conclusiveness of the ordinary action of judicial tribunals, was that a creditor of the estate could not falsify the account in the court of ordinary, his remedy being held to be at common law — he could not contest the payments of the Executor or Administrator, but as to him the oath of the party was conclusive. 2 Will, on Exors., 645 — 8, 1265. 1 Story’s Eq., 509.
This was the state of the former law. The mischief pertaining to it is stated at large in the opinion of the Court, and made to consist of a “continuance of liability to suit by the Administrator ; objection to reinvestigation of his accounts, expense of counsel, and trouble and vexation of defence of suit, embarrassment, &c., from sickness, loss of vouchers,” &c.
*345 Language so variant from that of all the authorities ancient and modern, announcing without exception, so far as I have been able to discover, the sound and salutary principle that Executors and Administrators are trustees to be held to a strict responsibility, and giving no encouragement to remissness or neglect in their accounts, has greatly surprised me. The earliest authorities agreeing with those of recent date are to the following effect:
“ Surely if it stand with reason that stewards, receivers, bailiffs, tutors, fathers, and such as have to deal for other persons, should be accountable for their stewardship, &c., with greater reason may it be maintained that an Executor should be subject to account rather than they; for they for the most part have to deal for such as be living, who may have an eye to their doings; but an Executor hath to deal for a dead person, who can neither see nor hear if his Executor deal unjustly. Again, if the Executor have well and faithfully executed his office and discharged the trust reposed in him, what should move him that he should not willingly make a due account thereof, &c. On the contrary, if he have played the unjust steward, much rather in that case ought he to be urged and compelled to make an account, that his fraud and deceit being detected he may be justly punished, and others by his punishment premonished.” Swinburne, 376.
“ The account is to be made to the Ordinary, who, therefore, not un-aptly may be termed the Executor of Executors, because he examines the account of every Executor, and the father of the fatherless, for that to poor orphans he is instead of a father.” Swinburne, 377.
To close, the door against enquiry, to prevent investigation and a suit to obtain their rights by creditors, legatees or distributees, are views as to the intention of the Legislature we conceive not lightly to be entertained. The excuse made, if a good one, would equally prevail against all investigation, and a settlement of accounts even before the Judge of Probate ,• for an Administrator may there, also, “ be put to great trouble, vexation and expense, and be prevented from settling his accounts by sickness, loss of vouchers or other casualty.” If he “ has faithfully arid honestly discharged the trust, and be in fact of an honest and ingenuous mind,” what reason has he to fear trouble or investigation; would he not rather invite the latter and reject, as an imputation upon his good name, a statutory provision which *346 would screen him from it ? Can there be a question but that investigation and scrutiny, free, open, full and fair, as under the old law, are the true and best security of the officer, whilst mischief and injury are the sure and certain result of presenting to his weakness, negligence or cupidity, the temptation of an Act of the Legislature to stifle and exclude enquiry into his accounts and prevent a just responsibility for his official action 1
But let us look at the remedy which finds such favor with the Court, and which it is said is so greatly preferable to the old rule. The discharge is thus obtained: “ It shall be competent for' the Administrator to receive the same on an application to be made after six months5 notice in one of the gazettes nearest the place where the letters were granted; and provided it shall appear that the applicant has faithfully and honestly discharged the trust and confidence reposed in him.” The proceeding is not entirely exparte, but as nearly so as it could well have been made, if any notice were to be given. It is not directed to be addressed to any one, nor is a time or place fixed for the hearing, but the discharge is to be after six months’ publication. But a more material omission and objection is that there is no provision for the making and issue by any of the parties as to any distinct fact, as to payment of debts, amount of assets, or contestation of the items of the account in any respect. Nor is there provision for the trial of any such issue, and yet upon the rightful solution of all these questions depends the result whether “ the Administrator has faithfully and honestly discharged the trust and confidence reposed in him.” This material and important matter is disposed of by the lame and unsatisfactory provision — “ povided it shall appear that the applicant has faithfully discharged the trust.” If a legatee desire to contest the receipt of his legacy — a creditor the satisfaction of his demand— a distributee the alleged amount of the assets — the expenditures and disbursements — how are all these to be disposed of? The Judge of Probate is not skilled to decide intricate questions of law. According to our Constitution, the jury are judges of the fact, and there is no power given to summon one. Even his power to subpoena witnesses is questionable ; and yet rights of property to any the greatest extent are put in jeopardy and determined by a proceeding before unheard of; without any time or place fixed for the hearing; without any issues; without witnesses, without jury, and without judge. *347 And this proceeding, so derogatory to principles of the common law the most venerated, and hitherto most sacred, is to be extended and carried beyond the provisions of the Act by construction. The Court says, “ the Legislature took care to use a term which only authorizes suits to charge them personally.” With due deference, the design of the Legislature was different from what is here stated. The statute was to relieve Executors and Administrators from responsibility in their official capacity, and did not concern with their individual or personal relations. There is no such expression in it as authorizing suits to “ charge them personally.” It speaks not of the institution of, but of the defence to a suit. But it is said that the words, “ against the person so having acted as Executor,” &c., are clear and definite, and support this idea of a charge personally. The Legislature, it seems to me, used these words as appropriate to the granting a discharge to a person who was no longer Executor or Administrator, and who yet might be liable to suit for past conduct. They could not with propriety say the discharge shall operate as a bar against such Executor, for he was out of office; but appropriately might say, as they have said, that it should operate against the person so having acted as such Executor, &e.
It is supposed to be incongruous and a solecism, to discharge these officers and release them from their duties whilst their responsibility continues; but why is it so ? Sheriffs, clerks, and other officers, are discharged from office and released from duty, and yet continue to be liable on their bonds for years afterwards. This has always been the case with Executors and Administrators, whose duties cease long before their responsibility. “ Familiar as the distinction between suits against Executors and Administrators as such, and suits to charge them personally, may be to every lawyer,” yet I confess myself wholly at a loss for the meaning of the Court in this position. Was it the design to say that they should be charged in the declaration individually, or personally, and not as Executors ? This would seem to be the rational inference. If this be true, actions then under this statute can only be brought for “ transactions arising subsequent to the death of the testator; for these are contracts of the Executor or Administrator, which charge him personally and in his individual character,” and not officially. 1 T. R. 487, 691. 4 T. R. 104. 8 Mass., 213. 3 do. 318, 190. 6 Hals., 163.
*348 It cannot apply to the ordinary case of a suit against an Executor, because its primary object is to make the money from the estate ; and it is only on proof of misappropriation of assets by an Executor, that he is made liable personally.
It is suggested that the action for a devastavit is alluded to. This can hardly be the case ; for it is said, in case of a suit to charge the Administrator personally, “ the burden of proof is changed, the onus rests on plaintiff, and he must shew by his pleadings and proof, that at the time the discharge was granted, the defendant had not faithfully and honestly discharged his duty.” Now, in case of devasta-vit, the proof always lay on plaintiff as it does in all other actions. What change then is made ? 3 Chitty PL, 254. 1 Saund. 219, N. 8.
What then are the actions that may be maintained, and how are they to be preferred under this new rule of action ?
If the discharge by the Statute operates only as a bar personally, or to a personal action, it would seem to me that actions against the Administrator in his official character, not being embraced by its provisions, would not be barred; they remain as at common law. It is said that “ the discharge is a judgment, to which the general principles of law relating to the conclusiveness of judgments do not apply.” This, it seems to me, surrenders the whole ground ; for, if not conclusive, it cannot be a bar ; if not a judgment, and having the effect of one, there is no other position to occupy with it. How otherwise is it made to conclude the action of plaintiff and prevent recovery ? After the lapse of five years, we consider that the discharge has the full effect of a judgment, and prevents all contestation as to the Administration. The Statute, in my view creates a new remedy, providing a prospective bar to operate unless suit be commenced within five years — allows suits by persons generally against the person having acted as Executor or Administrator within five years after' his discharge ; and infants, persons beyond seas, and others, five years and two years after their disabilities are removed, to bring suits.
Whilst the decision of the Court makes the discharge an absolute bar, the opinion makes it an immediate bar and not a bar — “ a judgment of a Court of competent jurisdiction,” and yet “ not a judgment so that the general principles of law apply to it” — conclusive and not conclusive — a proceeding of a Court of Probate, yet to which *349 «the rules of such Courts have no application for the most part, a defence to the action, and then to authorize suits against a defendant to charge him personally, and discriminating as to the person and object of the suit, — again, a proceeding which is “ to change the burden of proof. ” All this is produced by construction of a Statute which is declared highly remedial, though innovating most seriously upon common law principles. A construction, tbo, asserting that the intention is to govern against the letter, yet maintaining the letter against the intention; and declaring a mischief under the old law, whilst it creates a greater mischief under the new remedy.
A decision supported by such a'contrariety of positions, leaving thé subject in such uncertainty and obscurity, being so clearly in opposition to the manifest and unequivocal expressions of the Statute, can scarcely prevail as a permanent rule of action. -
By the Constitution of the State, the Judges of Probate are confined to the duties usually pertaining to courts of ordinary, subject to the direction and supervision of the courts of chancery. ’ It is to be hoped that this provision may correct, at least so far as action under the State Government is concerned, the evils which I apprehend may flow from this decision of the Court.